UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

EDWARD T. FURNACE,

Plaintiff,

v.

M. JUNIOUS, et al.,

Defendants.

CASE NO. 1:14-cv-01671-LJO-MJS (PC)

**ORDER DISMISSING:**

**1) CLAIMS RELATING TO PLAINTIFF'S INITIAL GANG VALIDATION WITH PREJUDICE BECAUSE THEY ARE BARRED BY *RES JUDICATA***

**2) REMAINING CLAIMS WITHOUT PREJUDICE**

**THIRTY (30) DAY DEADLINE**

Plaintiff is a state prisoner proceeding *pro se* and in *forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff has declined Magistrate Judge jurisdiction. (ECF No. 5) No other parties have appeared in this action. Plaintiff's complaint is before the court for screening.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has

raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. PLEADING STANDARD

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990), quoting 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim that is

plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 667-68.

## II. FACTUAL SUMMARY

### A. Plaintiff's Allegations

Plaintiff is currently incarcerated at Kern Valley State Prison, but the events giving rise to his allegations occurred when he was incarcerated in the Special Housing Unit (SHU) at Corcoran State Prison (CSP). He lists 38 named and two John Doe correctional officials as defendants. All are employed at CSP, holding positions ranging from rank-and-file correctional officers to high level prison administrators.

Plaintiff's allegations are difficult to follow, and despite taking up 24 pages, contain very few concrete facts. This much, however, the Court was able to glean from Plaintiff's complaint:

Plaintiff filed two prior lawsuits, Furnace v. Evans, 459 Fed. App'x 630 (9th Cir. 2011) and Furnace v. Giurbino, No. C-12-0873 2013 WL 6157954 (N.D. Cal. Nov. 22, 2013).[1] In retaliation for these lawsuits, Defendants initiated proceedings to validate Plaintiff as a member of the Black Guerilla Family (BGF) gang. Using Plaintiff's possession of the contact information for Hugo Pinell, a BGF leader, and of "publications written by or about George L. Jackson or the Black August memorial," Defendants unconstitutionally, discriminatorily and fraudulently validated Plaintiff as a BGF associate. As a result of the validation proceedings, Plaintiff was confined for an indefinite term to Corcoran SHU.[2] The 180-day classification reviews relevant to his gang validation status were "a meaningless waste of time and violation of his due

[1] The Court takes judicial notice of these cases.
[2] It appears that Plaintiff's term in SHU was, in fact, finite, because he is now incarcerated at KVSP.

process rights." Various administrative appeals that Plaintiff filed to protest his confinement in SHU were maliciously "screened out" by Defendants invoking a "code of silence" to suppress meritorious grievances. Even when Defendants did respond, they failed to investigate or take remedial action, further demonstrating adherence to the "code" as well as their roles in a conspiracy to violate Plaintiff's rights. Defendants fallaciously charged Plaintiff with rules violations in order to compel him to associate with gang members. Defendants failed to protect Plaintiff from an "alleged plan to kill or assault Plaintiff" that Defendants knew about as early as 2011, but did not disclose to Plaintiff until May 2014. (Plaintiff seems to suggest that Defendants may have also purposely set him up to be murdered in retaliation for his lawsuits.) Plaintiff acknowledges that "he has never claimed an enemy, never identified an enemy, never told any CDCR employee he was in danger or needed their protection…." Plaintiff alleges there is a "compact" among correctional officers for the "fraudulent perpetuation of gang activity" in order to "racially classify, profile, and segregate African American prisoners."

**B. Case History**

Plaintiff has challenged the procedures by which he was validated as a BGF associate in numerous lawsuits in at least three forums, including this one. Furnace v. Giurbino, No. C-12-0873 2013 WL 6157954, at *1 (N.D. Cal. Nov. 22, 2013)(noting that that action was "plaintiff's fourth court challenge to his gang validation and resulting Secured Housing Unit ('SHU') placement"). The two cases that affect the present action most significantly, however, are Giurbino, 2013 WL 6157954 and In re Furnace, 185 Cal. App.4th 649 (Cal. Ct. App. 2010). The court discusses each in turn.

**1. In re Furnace**

In In re Furnace, the California Court of Appeals addressed Plaintiff's due process and free speech claims directly. 185 Cal. App. 4th at 654. Plaintiff challenged the adequacy of the notice for his validation proceedings and the sufficiency of the evidence used to validate him as a BGF associate on due process grounds. This evidence consisted of the address of Hugo Pinell, an incarcerated leader of the BGF; a book about George Jackson, "martyr for BGF ideology;" a CD about Jackson's life; and a flier and newspaper article about Black August, a BGF celebration commemorating a bloody failed attempt to "liberate" three inmates from the Marin County Courthouse in 1970. Plaintiff also argued that the use of "an approved book and a newspaper article" to draw a connection between him and the gang violated his First Amendment rights.

The Court of Appeals concluded that Furnace had had adequate notice of the validation proceedings, and that under Superintendent v. Hill, 472 U.S. 445, 455-456 (1985), Plaintiff's validation had been supported by "some evidence." In re Furnace, 185 Cal.App. 4th at 663. California regulations governing gang validation procedures, Cal. Cod. Reg. § 3378, require prison officials to have at least three pieces of evidence supporting a gang connection, one of which must provide a "direct link" to a known gang member. The Court found that Hugo Pinell's contact information provided the requisite "direct link;" and that the book, article, and flier relating to the BGF, which a prison gang expert concluded "are kept by BGF associates while they are being indoctrinated" with BGF ideology, provided the other supporting evidence of Furnace's association with the gang. Id.

The Court also rejected Plaintiff's First Amendment Claim, applying the four-prong test in Turner v. Safley, 482 U.S. 78, 89-91 (1987). In re Furnace, 185 Cal. App 4th at

666. Plaintiff's petition for rehearing was denied, as was a petition for review by the California Supreme Court. Giurbino, 2013 WL 6157954, at *2.

**2. Furnace v. Giurbino**

After the ruling in In re Furnace, Plaintiff filed suit in the Northern District of California, reiterating his claims that there was insufficient evidence to support his gang validation, and that using books and newspapers to connect him to the BGF violated his First Amendment rights. He added claims that the gang validation procedures were initiated in retaliation for his prior, unrelated lawsuit, Furnace v. Evans, No. 06-4229 MMC (PR), and that singling him out as a gang associate violated the Equal Protection clause. Giurbino, 2013 WL 6157954, at *2, *5.

The district court concluded that all of Furnaces's claims were barred by *res judicata.* Furnace's due process challenge to the gang validation proceeding and his First Amendment challenge to the evidence used to validate him were barred by collateral estoppel. The Court noted that that In re Furnace was a final judgment, and the Court of Appeals had already decided identical claims against Furnace. Giurbino, 2013 WL 6157954, at *3. Plaintiff's Equal Protection and retaliation claims, meanwhile, were barred by claim preclusion, because the new claims arose out of the same "cause of action" involving the "same injury to the plaintiff and the same wrong by the defendant." Id., at *4-*5.

Furnace appealed the Northern District's ruling to the Ninth Circuit, and his appeal is currently pending. Furnace v. Giurbino, No. 13-17620.

**III. DISCUSSION**

To the extent that Plaintiff renews his challenges to the motivations for, or procedure by which, he was initially validated as a BGF associate, his claims are barred by *res*

*judicata*. Meanwhile, he has not provided sufficient facts to state cognizable claims on the basis of the procedures governing the 180-day classification hearings, handling of his grievances, continued retaliation for his First Amendment activities, allegedly racist or discriminatory policies by Corcoran staff, his conditions of confinement in SHU, or Defendants' failure to protect him from an alleged murder plot.

### A. *Res Judicata*

#### 1. Collateral Estoppel/Issue Preclusion

Collateral estoppel, or issue preclusion, forecloses "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." Giurbino, No. 2013 WL 6157954, at *3 (citing Taylor v. Sturgell, 553 U.S. 880, 892 (2008)). The purpose of issue preclusion is to protect against vexatious litigants, to conserve judicial resources, and to minimize the possibility of inconsistent decisions. Giurbino, 2013 WL 6157954, at *3 (citing Montana v. United States, 440 U.S. 147, 153 (1979). "To determine the preclusive effect of a state court judgment, federal courts look to state law." Valley View Health Care, Inc. v. Chapman, 992 F.Supp.2d 1016, 1044 (E.D. Cal. 2014)(citing Intri-Plex Tech., Inc. v. The Crest Grp., Inc., 499 F.3d 1040, 1052 (9th Cir. 2007)); accord White v. City of Pasadena, 671 F.3d 918, 927 (9th Cir. 2012).

In California, "collateral estoppel precludes relitigation of issues decided in prior proceedings." Hernandez v. City of Pomona, 46 Cal.4th 501, 513 (Cal. 2009). California courts only apply the doctrine if the following threshold requirements are met: "[first], the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding.

Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." Id. (citing Lucido v. Sup. Ct., 51 Cal.3d 335, 341 (Cal. 1990); accord White, 671 F.3d at 927.

Here, collateral estoppel applies to Plaintiff's due process challenges to his initial validation as a BGF associate. Identical claims were directly addressed by the Court of Appeals in In re Furnace. The decision in In re Furnace was on the merits and it was final because Plaintiff's subsequent attempts to obtain rehearing and review by the California Supreme Court were denied. The party against whom preclusion is sought is the same, that is, Plaintiff. Thus, insofar as Plaintiff continues to challenge the evidentiary basis for his initial validation, his claim is barred by issue preclusion.

**2. Claim Preclusion**

Under California law, claim preclusion applies when: (1) the party to be precluded was a party… to the previous adjudication; (2) the second lawsuit involves the 'same cause of action' as the first; and (3) there was a final judgment on the merits in the first lawsuit. Giurbino, 2013 WL 6157954, at *4 (citing San Diego Police Officers' Ass'n, 568 F.3d at 734).

**a. Identity of Parties**

Here, Plaintiff was a party to both In re Furnace and the instant action. The fact that some or all of the defendants are different is irrelevant under California law. San Diego Police Officers' Ass'n, 568 F.3d at 736; Giurbino, 2013 WL 6157954, at *4; see also Pagtakhan v. Alexander, 999 F.Supp.2d 1151 (N.D. Cal. 2013). Therefore, the first prong of the claim preclusion test is met.

**b. Cause of Action**

Under California's "primary rights theory," a cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty. Gonzales v. CDCR, 739 F.3d 1226, 1232 (9th Cir. 2014); Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2009). "If two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake, even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief, and/or adds new facts supporting recovery." Gonzales, 739 F.3d at 1233 (citing Eichman v. Fotomat Corp., 147 Cal. App. 3d 1170 (Cal. Ct. App. 1983). "If the same primary right is involved in two actions, judgment in the first bars consideration not only of all matters actually raised in the first suit, but also all matters which *could have been raised.*" Gonzales, 739 F.3d at 1233 (emphasis in original).

Here, Plaintiff's injury in both In re Furnace and in the present case was being validated as a gang associate, and the wrong was allegedly validating him unconstitutionally. The primary right in both cases was his interest in not being validated as a gang member or placed in SHU. See Gonzales, 739 F.3d at 1233. Therefore, the court finds that the instant case involves the same "cause of action" as In re Furnace.

**c. Final Judgment on the Merits**

As discussed supra, the decision in In re Furnace was a final judgment on the merits. See also Giurbino, 2013 WL 6157954, at *6. In re Furnace was a published Court of Appeals decision, and Plaintiff's petition for a rehearing and his petition for review in the California Supreme Court were denied.

**d. Conclusion**

Claim preclusion applies to the instant case. Plaintiff's retaliation, equal protection, and any state law tort claims (e.g. fraud), brought on the basis of his initial validation as a BGF associate, are barred by the judgment in In re Furnace. Even though Plaintiff did not plead these causes of action in In re Furnace, he could have done so and thus he is precluded from bringing them now.

**B. Due Process**

**1. Classification Hearings**

Placing an inmate indefinitely in SHU may amount to the deprivation of a protected liberty interest, triggering procedural due process requirements. See Wilkinson v. Austin, 545 U.S. 209, 224 (2005). However, while the process due an inmate during initial validation proceedings need only comport with the "minimally stringent" "some evidence" standard, Castro v. Terhune, 712 F.3d 1304, 1314 (9th Cir. 2013), the standard with which reclassification hearings must comply appears to be somewhat murkier. Compare Brown v. Ore. Dept. of Corr., 751 F.3d 983, 987 (9th Cir. 2014)(inmate confined for 27 months in SHU had due process right to unspecified "meaningful review" of placement) with Gamez v. Gonzalez , 481 Fed.App'x 310, 311 (9th Cir. 2012)(indicating that re-validation procedures were subject to the "some evidence" standard) and Dawkins v. McGrath, No. CIV S-03-1643 2009 WL 5110668, at *8 (E.D. Cal. Dec. 18, 2009)(concluding that "periodic review" of gang affiliation was, on its own, sufficient) and Ashker v. Brown, No. C 09-5796 2013 WL 1435148, at *8-*9 (N.D. Cal. April 9, 2013)(concluding that plaintiffs' "gang status reviews and revalidations" violated due process, but declining to state which standard applied); see also Castro, 712 F.3d at 1314-1315 (finding that the age of evidence used to reclassify

inmates as gang members could affect its weight, suggesting there are some evidentiary standards for reclassification hearings); Gonzalez, 739 F.3d at 1234 (concluding that the debriefing requirement, which requires gang members to renounce gang affiliation and/or name other gang members in order to get out of SHU, could violate the Eighth Amendment for an inmate who has been erroneously classified as a gang member).

Here, Plaintiff has failed to plead sufficient facts indicating that his reclassification hearings were unconstitutional under any test. He characterizes these hearings as "meaningless," but he does not describe the procedures followed at these hearings, the evidentiary basis for reclassifying him, or the opportunities, if any, he had to contest the investigators' findings. Without more factual information regarding his reclassification hearings, the Court will dismiss Plaintiff's due process claims without prejudice.

**2. Grievance Procedure**

Prison staff actions in responding to Plaintiff's administrative appeals alone cannot give rise to any claim for relief under § 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993), citing Azeez v. DeRobertis, 568 F.Supp. 8, 10 (D.C. Ill. 1982). A prisoner does not have a claim of entitlement to a grievance procedure. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Ramirez v. Galarza, 334 F.3d 850, 860 (9th Cir. 2003).

Plaintiff may not state a due process claim arising solely from allegedly improper processing and denial of administrative grievances. Leave to amend such a claim is futile and denied on that basis.

**C. First Amendment Retaliation**

"Within the prison context, a viable claim of First Amendment retaliation entails

five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that inmate's protected conduct, and that such action (4) chilled the inmate's exercise of her First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff has failed to state a valid retaliation claim. He provides no more than conclusory statements that he continued to be housed in SHU "as a means to retaliate" against him for filing lawsuits. He does not provide any basis, however, for his conclusion. As an initial matter, he does not indicate that Defendants were even aware of his prior lawsuits. More significantly, however, he provides no indication that his continued placement in SHU did not advance a legitimate penological interest. Plaintiff's initial gang validation furthered the legitimate goal of preserving the safety and security of Corcoran by "frustrating prison gang indoctrination and group solidarity." In re Furnace, 185 Cal. App. 4th at 665. Plaintiff provides no indication that continuing to keep him in SHU did not, in turn, continue to advance this legitimate goal. Therefore, the Court will dismiss this claim without prejudice.

**D. Equal Protection – Racial Discrimination**

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). This requires Plaintiff to show he was intentionally treated differently because of his membership in an identifiable group, e.g., Ariz. Dream Act Coal. v. Brewer, 757 F.3d 1053 (9th Cir. 2014) or a constitutionally suspect class, e.g., Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004)(black inmate worker stated valid Equal Protection claim on basis of race). Where an inmate alleges disparate

treatment on the basis of a suspect classification, strict scrutiny applies. Johnson v. California, 543 U.S. 499, 505 (2005).

Here, Plaintiff fails to plead sufficient facts to state a claim that he, as an African-American, was treated differently from other inmates of other races, or that prison staff had a *de facto* policy of using gang validation and/or reclassification procedures to target, profile, or segregate black inmates. While CDCR has, in the past, impermissibly used inmates' race as a proxy for gang membership, see Johnson, 543 U.S. at 517, Plaintiff has not pleaded sufficient facts to support such an allegation here. Instead, he makes conclusory statements and unsupported assumptions about Defendants' motivations for their conduct. The Court will therefore dismiss Plaintiff's claim without prejudice to Plaintiff amending his complaint to plead specific facts or occurrences indicating that he was treated differently from inmates of other races.

**E. Eighth Amendment – Conditions of Confinement**

The Eighth Amendment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Conditions of confinement may be, and often are, restrictive and harsh; however, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Conditions devoid of legitimate penological purpose or contrary to evolving standards of decency violate the Eighth Amendment. Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346; Morgan, 465 F.3d at 1045 (quotation marks and citations omitted).

Eighth Amendment claims have both subjective and objective components. An inmate must show that prison officials subjectively acted with deliberate indifference to

his health and safety, thereby objectively depriving him of the minimal civilized measure of life's necessities. Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996)(citing Wilson v. Seiter, 501 U.S. 294, 303-303 (1991); Rhodes, 452 U.S. at 347).

Plaintiff fails to state an Eighth Amendment claim on the basis of his confinement in SHU. He provides no details about his treatment in SHU, but states in conclusory fashion that "defendants violated [his] rights by conspiring and retaliating against him by keeping him in the SHU for years." (ECF No. 1, at 25.) The Court will give Plaintiff leave to amend to plead additional facts to satisfy the two-prong conditions of confinement test.

**F. Eighth Amendment – Failure to Protect**

Under the Eighth Amendment, prison officials have a duty to take reasonable steps to protect inmates from assaults at the hands of other inmates. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994). To establish a violation of this duty, the prisoner must show first, that he was incarcerated under conditions posing a substantial risk of serious harm; and second, that a prison official knew of and was deliberately indifferent to this risk. Id. at 834. While an inmate cannot meet Farmer's first prong by raising purely speculative fears of attacks from other inmates, Contreras v. Collins, 50 Fed. Appx. 351, 352 (9th Cir. 2002), he need not have actually suffered harm in order to obtain injunctive relief from unsafe conditions. Farmer, 511 U.S. at 845.

Plaintiff fails to plead sufficient facts to allege a cognizable failure to protect claim. He concedes that he himself never informed Defendants that he faced danger from other inmates. He states that prison staff told him of an alleged plan by other inmates to harm

him in May 2014, and that unspecified documentation[3] he received in July 2014 indicated that at least one Defendant knew about the plan as early as 2011. However, these facts do not establish either that Plaintiff faced a substantial risk of harm or that Defendants were deliberately indifferent to this risk. The mere fact that a prison staff member does not tell an inmate of a potential threat to the inmate does not indicate that the staff member was deliberately indifferent. The staff member may have concluded that the threat was not credible, or the inmate was not at risk, or that the threat could be dealt with in ways other than by informing the inmate. Here, Plaintiff was not, apparently, attacked by anyone during the three years between the time prison staff allegedly learned of the threat and time Plaintiff did. This lengthy period of time strongly supports the inference that Plaintiff did not actually face a substantial risk of harm or that Defendant(s) were not deliberately indifferent, either because they correctly assessed Plaintiff's risk as low or because they adequately dealt with the threat in ways other than directly informing Plaintiff of it.

The Court will afford Plaintiff the opportunity to amend his claim to provide facts supporting a different conclusion.

**IV. CONCLUSION AND ORDER**

Plaintiff's complaint fails to plead sufficient facts to state a cognizable claim on any ground. Because the legality and/or constitutionality of Plaintiff's initial gang validation has already been litigated, the Court DISMISSES all claims relating to the initial validation, as well as claims alleging improper handling of grievances, with prejudice. The Court DISMISSES the remaining First, Eighth, and Fourteenth

[3] Plaintiff has neither described the nature or content of this documentation, nor included it with his pleadings.

Amendment claims that relate to Plaintiff's reclassification and continued placement in SHU without prejudice.

The Court grants Plaintiff the opportunity to correct the deficiencies analyzed above in an amended complaint. See Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)(no "buckshot" complaint).

An amended complaint would supersede the prior complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 f.2d 565, 567 (9th Cir. 1987). Thus, it must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's signed first amended complaint (ECF No. 1) is DISMISSED for failure to state a claim upon which relief may be granted,
2. The Clerk's Office shall send Plaintiff (1) a blank civil rights amended complaint form and (2) a copy of his complaint filed October 27, 2014,
3. Plaintiff shall file an amended complaint within thirty (30) days from service of this order, and
4. If Plaintiff fails to comply with this order, the Court will recommend that this action be dismissed, without prejudice, for failure to obey a court order.

IT IS SO ORDERED.

Dated: May 4, 2015

/s/ Michael J. Seng
UNITED STATES MAGISTRATE JUDGE